**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MELLISSA WOMACK** *et al.,* | : | |
| *Plaintiffs* | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **HOUSING AUTHORITY OF** | : | |
| **CHESTER COUNTY,** | : | **No. 19-4962** |
| *Defendant* | : | |

### MEMORANDUM

PRATTER, J.                                                                                                  JUNE 23, 2020

Mellissa Womack and her two children are disabled former participants in the Housing Authority of Chester County's ("HACC") Section 8 Housing Choice Voucher Program. The Womacks allege that throughout their time in the program, HACC violated the Fair Housing Act ("FHA"), their procedural due process rights under the Fourteenth Amendment, and Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"). HACC moves to dismiss the complaint.

For the reasons that follow, the motion to dismiss is granted in part and denied in part.

### BACKGROUND

Ms. Womack moved to Pennsylvania in September 2016 and received a voucher for participation in HACC's Section 8 program, at which time she informed HACC of her family members' various disabilities. These disabilities include, but are not limited to, emotional and developmental disorders, hypersensitivity to chemicals, asthma, allergies, and anxiety. After HACC responded to her application, Ms. Womack accepted a rental in Parkesburg, Pennsylvania. The rental unit passed an inspection on September 2, 2016, and the Womacks moved in on September 3, 2016. During the Womacks' tenancy, however, the unit was re-inspected three times and failed "for a variety of reasons." Compl. ¶ 38.

1

The failed inspections required the Womacks to relocate but "HACC did not assist [them] in finding a unit to meet their disabilities." *Id.* at ¶ 39. Without HACC's assistance, Ms. Womack located a townhouse community ("TC") in Chester County. The TC agreed to participate in HACC's Section 8 program and entered into the necessary agreements, and Ms. Womack entered into a lease with the TC in November 2017. Ms. Womack requested that a number of modifications be made to the unit to accommodate her family members' disabilities, including, among other things, installing a special sanitizing washer and dryer, a second refrigerator, grab bars in the shower, and a second handrail on the stairs. The TC permitted the installation of a second washer and dryer and refrigerator but never completed the other requests.

The Womacks claim that they began to experience adverse medical symptoms after they moved into the TC due to the poor air quality in the unit. The family made HACC aware of the issue and moved into a series of hotels for several weeks, from February 20, 2018 until March 4, 2018, at which time they moved back into the TC due to a lack of funds for the hotels. The TC was later inspected on March 20, 2018. The inspection uncovered a faulty stove and tub stopper, but HACC did not inspect the windows and failed to discover that they did not open. HACC also did not evaluate the unit's air quality.

The unit was inspected again on April 17, 2018 and failed because the TC had not completed any of the repairs required after the first inspection. HACC began withholding rent from the TC and issued Ms. Womack a move voucher on April 25, 2018. HACC later granted her a 60-day extension, but Ms. Womack failed to find new housing before the extension expired. The unit failed an annual inspection on August 28, 2018 and again on September 25, 2018. On October 9, 2018, HACC sent Ms. Womack a letter informing her that the unit had been in abatement and HACC needed to end the contract with the landlord. HACC also informed Ms. Womack that it would issue her a final move voucher on October 10, 2018, which would expire on December 9, 2018.

Ms. Womack claims that the TC failed to assist her in finding an apartment that would accommodate her family members' disabilities. She states that she was offered a realtor who provided her with a list of all available apartments, but the list was not limited to those accepting Section 8. She also claims that she was given an electronic list of apartments, but she could not view the list because she was homeless and had no access to a computer. The Womacks claim that they were homeless for roughly 15 days and stayed in hotels.

HACC allegedly sent Ms. Womack another letter extending the voucher to February 1, 2019, but HACC did not offer any assistance to her to find a new apartment. When Ms. Womack failed to find a new apartment, HACC terminated her enrollment in the Section 8 program.

Ms. Womack requested a hearing regarding the termination of her voucher and HACC's failure to assist her in finding an accessible unit, but she alleges that the hearing did not occur in a reasonably expeditious manner. Ms. Womack also claims that HACC failed to accommodate her request for an exception due to her family members' disabilities, increase her payment standard based on reasonable accommodations, increase her utility allowance, properly inspect the unit in the TC, provide her with a full copy of her records, and publish or promulgate an administrative plan that included rules regarding extensions of vouchers or identified the needs of disabled individuals.

## LEGAL STANDARD

To survive a motion to dismiss, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The question is not whether the claimant "will ultimately prevail . . . but whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011) (citation and internal quotation marks omitted).

3

In evaluating the sufficiency of a complaint, the Court adheres to certain well-recognized parameters. For one, the Court may consider "only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Also, the Court must accept as true all reasonable inferences emanating from the allegations and view those facts and inferences in the light most favorable to the nonmoving party. *See Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir. 1989); *see also Revell v. Port Auth.*, 598 F.3d 128, 134 (3d Cir. 2010).

That admonition does not demand that the Court ignore or discount reality. The Court "need not accept as true unsupported conclusions and unwarranted inferences." *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183–84 (3d Cir. 2000) (citations and internal quotation marks omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *see also Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (explaining that a court need not accept a plaintiff's "bald assertions" or "legal conclusions") (citations omitted).

## DISCUSSION

The Womacks have sued HACC for (I) violations of the FHA; (II) violations of procedural due process under 42 U.S.C. § 1983; and (III) violations of the UTPCPL.[1] HACC moves to dismiss the complaint in its entirety.

---

[1]     The Court notes that the Womacks argue in opposition to HACC's motion to dismiss that their allegations sufficiently state claims for violations of Section 504 of the Rehabilitation Act. However, the Womacks have not brought a claim alleging a violation of the Rehabilitation Act in the complaint, and "the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Clean Air Council v. United States*, 362 F. Supp. 3d 237, 245 (E.D. Pa. 2019) (quoting *Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988)). If the Womacks wish to pursue claims under the Rehabilitation Act, they may seek leave to file an amended complaint.

## I.    Violations of the FHA

The Womacks allege that HACC violated the FHA by failing to provide reasonable modifications and accommodations to their TC apartment, failing to adequately inspect the Womacks' units, failing to increase the Womacks' utility allowances, and failing to extend the Womacks' voucher term.

The FHA prohibits "discriminat[ion] against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap." 42 U.S.C. § 3604(f)(2). A plaintiff may bring three types of claims under the FHA: "(1) intentional discrimination claims (also called disparate treatment claims) and (2) disparate impact claims, both of which arise under § 3604(f)(2), and (3) claims that a defendant refused to make 'reasonable accommodations,' which arise under § 3604(f)(3)(B)." *Cmty. Servs., Inc. v. Wind Gap Mun. Auth.*, 421 F.3d 170, 176 (3d Cir. 2005) (citing *Lapid-Laurel, L.L.C. v. Zoning Bd. of Adjustment of Twp. of Scotch Plains*, 284 F.3d 442, 448 n.3 (3d Cir. 2002)).

At the outset, the Court notes that whether a public housing authority can be sued under the FHA appears to be an open question in this circuit. *See Spieth v. Bucks Cty. Hous. Auth.*, 594 F. Supp. 2d 584, 592 (E.D. Pa. 2009) ("Third Circuit dicta suggests that the [FHA] does not apply to suits against [public housing authorities] who provide disabled persons with vouchers for housing assistance."). In *Growth Horizons, Inc. v. Delaware County, Pa.,* 983 F.2d 1277, 1283 (3d Cir. 1993), the Court of Appeals for the Third Circuit stated:

> Nothing in the text or legislative history of § 3604(f)(1) suggests to us that Congress intended to regulate and thereby subject to judicial review the decision-making of public agencies which sponsor housing for the handicapped. This is not to say that the decision of such agencies cannot be tainted by bias against the handicapped. But that problem, if it exists, is far different from and presumably less serious than the problem of biased sellers and lessors Congress here addressed.

"However, *Growth Horizons* only addressed Section 3604(f)(1), concerning the sale or rental of a dwelling . . . ." *Antonelli v. Gloucester Cty. Hous. Auth.*, No. 19-16962, 2019 WL 5485449, at *6 (D.N.J. Oct. 25, 2019). In contrast, the Womacks' allegations align with a failure to accommodate claim, which arises under Section 3604(f)(3).[2]  As such, the Court finds that *Growth Horizons* does not directly control the claims in this matter and the Womacks may pursue a claim against HACC under the FHA.

"In order to state a claim under the [FHA] for a failure to accommodate, a plaintiff must show 'the reasonable accommodations that she requested are 'necessary to afford handicapped persons an equal opportunity to use and enjoy a dwelling.'" *Coyne v. Holy Family Apartments*, No. 19-4583, 2020 WL 2063475, at *6 (E.D. Pa. Apr. 29, 2020) (quoting *Lapid-Laurel*, 284 F.3d at 459). "To survive a motion to dismiss, a plaintiff need only plausibly plead enough facts to make out the three elements set forth in § 3604(f)(3)(B): refusal, reasonable accommodation, and necessity/equal opportunity." *Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 111 (3d Cir. 2018).

Here, the Womacks allege that after they moved into the TC, they made requests to the TC for various modifications, including the installation of a specific washer and dryer, a handrail, and grab bars in the shower. The TC authorized installation of the washer and dryer, as well as a refrigerator, but did not complete any of the other requested modifications. HACC was copied on

---

[2]     That said, the Womacks do not specify under which subsection of § 3604(f) they bring their FHA claim. Therefore, out of an abundance of caution, the Court will also examine whether the Womacks' allegations state a claim under either a theory of disparate treatment or disparate impact.

In a case of disparate treatment, "a 'plaintiff must establish that the defendant had a discriminatory intent or motive,'" while "a plaintiff bringing a disparate-impact claim challenges practices that have a 'disproportionately adverse effect on minorities' and are otherwise unjustified by a legitimate rationale." *Tex. Dep't of Hous. & Cmty. Affairs v. Inclusive Communities Project, Inc.*, 135 S. Ct. 2507, 2513 (2015) (quoting *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009)). Here, however, Ms. Womack has not alleged any discriminatory motive on the part of HACC, and "nothing in [the] complaint suggests that she is bringing a disparate impact claim because she alleges facts specific only to her situation." *Spieth*, 594 F. Supp. 2d at 593. Therefore, the complaint fails to state a claim for disparate treatment or disparate impact.

the requests made to the TC and was allegedly aware of the TC's failure to grant the modifications. The Womacks claim that HACC had a duty to communicate with the TC about the reasonable modifications and to enforce the FHA as to the TC.

HACC argues that there is no provision of the FHA that requires HACC to enforce its mandate as to other entities, meaning that HACC cannot be responsible for reasonable modifications that were requested of the TC and not HACC itself. The Womacks do not offer a responsive argument on this point or cite any court decisions confirming the existence of such a duty, nor has the Court independently found such support. To state a failure to accommodate claim under the FHA, a plaintiff must allege that the defendant refused to make the requested reasonable modifications. Here, the Womacks allege that they requested the TC make physical modifications to their home and HACC failed to force the TC to comply with their requests. This does not allege a refusal on the part of HACC, and accordingly fails to state a claim.[3]

However, in addition to the requested physical modifications to the TC, Ms. Womack also claims that she requested various accommodations under Department of Housing and Urban Development ("HUD") regulations, including an increase to her payment standard under 24 C.F.R § 982.503(b)(1)(v), an extension to the voucher term under 24 C.F.R § 982.303(b)(2), and an exception under 24 C.F.R § 8.28(a)(5). HACC allegedly denied all of the requests.

HACC argues that an exhibit attached to the complaint proves that HACC granted the Womacks a 60-day voucher extension in April 2018 and another extension in October 2018 to

---

[3]     The Court also notes that 42 U.S.C. § 3604(f)(3)(B) only requires reasonable accommodations in "rules, policies, practices, or services." "Examples include creating an exception to a no-pets policy to allow a resident to have a service dog, reserving a parking space for a mobility-impaired resident when parking spaces are usually allocated on a first-come, first-served basis, and granting a zoning variance," highlighting that "accommodations in 'rules, policies, practices, or services' do not include serious physical changes to the premises." *Lefkowitz v. Westlake Master Ass'n, Inc.*, No. 18-14862, 2019 WL 669806, at *3 (D.N.J. Feb. 19, 2019) (citations omitted). The Womacks' allegations surrounding their requests to the TC do not include any modifications to rules, policies, practices, or services, and thus fail to state a claim for this reason as well.

provide them with the opportunity to locate a new place to live. *See* Compl. Ex. B. However, if a family "needs and requests an extension of the initial voucher term as a reasonable accommodation . . . to make the program accessible to a family member who is a person with disabilities, the PHA must extend the voucher term up to the term reasonably required for that purpose." 24 C.F.R § 982.303(b)(2). Even if HACC granted the Womacks two extensions, it is plausible that an additional extension may have been reasonable under the circumstances to accommodate the Womacks' disabilities. Whether such an extension was indeed reasonably required, however, is an inherently fact-based inquiry that is unfit for resolution at the pleadings stage. *See, e.g., Volis v. Hous. Auth. of L.A.*, No. 14-08747, 2015 WL 5167464, at *2–3 (C.D. Cal. Sept. 3, 2015) (denying motion to dismiss and rejecting defendant housing authority's argument that its refusal to extend a voucher could not have been improper where it had granted earlier extensions because the argument raised "potential factual issues regarding Plaintiff's need for a reasonable accommodation and the potential span of any reasonable time period for purposes of 24 CFR 982.303(b)(2)").

Likewise, if necessary as a reasonable accommodation for a person with disabilities, a public housing agency "shall . . . approve a family request for an exception rent," 24 C.F.R § 8.28(a)(5), and "may establish an exception payment standard of not more than 120 percent of the published [fair market rent]," 24 C.F.R § 982.503(b)(1)(v). Ms. Womack alleges she requested both exceptions to accommodate her family members' disabilities but HACC denied the requests. Again, whether denying Ms. Womack's requests actually amounted to a denial of a reasonable accommodation is a factual question that cannot be answered only from the allegations before the Court at this time.

Because the facts as pled plausibly support a claim that HACC denied the Womacks a reasonable accommodation, the Court denies the motion to dismiss the Womacks' FHA claim as to HACC's alleged violations of the HUD regulations.

## II.    Violations of Procedural Due Process Under § 1983

The Womacks next seek to hold HACC liable under § 1983 for alleged violations of their constitutional right to procedural due process. They claim that HACC deprived them of their property without due process when HACC failed to schedule a hearing in an expeditious manner, failed to give Ms. Womack access to her file, failed to extend the term of the Womacks' voucher, and failed to accommodate the Womacks' disabilities by not assisting the family to find a rental property, allowing the Womacks to use funds withheld from the TC, or increasing the Womacks' rent subsidy.

### A.    The Procedures Allegedly Provided

When a plaintiff alleges a state actor's violation of her right to procedural due process, the Third Circuit Court of Appeals employs a "familiar two-stage analysis" in which the court analyzes "(1) whether 'the asserted individual interests are encompassed within the fourteenth amendment's protection of life, liberty, or property'; and (2) whether the procedures available provided the plaintiff with 'due process of law.'" *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000) (quoting *Robb v. City of Philadelphia*, 733 F.2d 286, 292 (3d Cir. 1984)).

The Womacks' "Section 8 voucher, like welfare benefits, is a property interest for purposes of due process." *Swift v. McKeesport Hous. Auth.*, 726 F. Supp. 2d 559, 574 (W.D. Pa. 2010) (citing *Goldberg v. Kelly*, 397 U.S. 254, 262 (1970). In determining whether the Womacks were deprived of their Section 8 voucher without due process, "it is necessary to ask what process the State provided, and whether it was constitutionally adequate." *Revell*, 598 F.3d at 138 (quoting *Zinermon v. Burch*, 494 U.S. 113, 126 (1990)).

9

HACC argues that the Womacks' § 1983 claim must be dismissed because the process it provided was sufficient. HACC asserts that it worked continuously with the Womacks in an attempt to find them a place to live that would be suitable for their disabilities. HACC also claims that prior to terminating the Womacks' voucher, it provided the Womacks with a notice of termination and an opportunity for an informal hearing with a proposed date as early as November 2018, but the Womacks did not take the opportunity to participate in a hearing. HACC says that it terminated the Womacks' voucher because they failed to use it or take advantage of multiple subsequent opportunities to participate in an informal hearing. By taking these precautions, HACC claims that it took the steps necessary to ensure the Womacks' rights were not violated.

Now is not the time, however, for the Court to consider HACC's version of the facts where the events HACC describes rely on information not contained in the complaint, the attached exhibits, or matters of public record. At this stage, the Court must accept the Womacks' allegations as true, without considering facts outside of those pled. As pled, the Womacks have stated facts that plausibly allege violations to their right to procedural due process. *See, e.g., Lopez v. Johnson*, No. 09-02174, 2010 WL 2557451, at \*4 (E.D. Cal. June 21, 2010) (concluding that plaintiff had stated a claim under § 1983 for defendant's failure to permit her to examine relevant documents prior to her hearing); *Lowery v. D.C. Hous. Auth.*, No. 04-1868, 2006 WL 666840, at \*11 (D.D.C. Mar. 14, 2006) (finding allegations that a housing authority had failed to provide a reasonably expeditious hearing as mandated by 24 C.F.R. § 982.555(d) presented a cognizable claim under § 1983).

However, the Court notes that in pursuing their claim under § 1983, the Womacks cannot rely on their allegation that HACC failed to accommodate their disabilities, "including but not limited to: assistance in finding a rental property, allowing [Ms. Womack] to use funds withheld from the TC but cannot pursue their claims, allowing her increased rent subsidy to accommodate

disabilities." Compl. ¶ 49. First, the Womacks do not identify what, if any, federal right entitles them to use funds that were withheld from the TC. Without an alleged underlying violation of a federal constitutional right, there can be no claim under § 1983. Second, HACC's alleged failure to assist the Womacks in finding a rental property relates to HUD regulation 24 CFR § 8.28(a)(3), and HACC's alleged failure to provide an increased rent subsidy relates to § 8.28(a)(5). But a plaintiff cannot maintain a claim under § 1983 to enforce the regulations under 24 C.F.R. § 8.28. *See Taylor ex rel. Wazyluk v. Hous. Auth. of New Haven*, 645 F.3d 152, 153–54 (2d Cir. 2011) (adopting district court's "carefully considered" conclusion that 24 C.F.R. § 8.28 may not be privately enforced through § 1983). For these reasons, the Womacks' allegations that HACC failed to accommodate their disabilities cannot support their claim under § 1983.

### B.   *Monell* Liability

In addition to pleading facts that plausibly allege a violation of a federal constitutional right, for the Womacks' § 1983 claim to survive dismissal they must also allege municipal liability. *See Watson v. Phila. Hous. Auth.*, 629 F. Supp. 2d 481, 487 (E.D. Pa. 2009) ("[A] public housing authority . . . is considered a municipal corporation for the purposes of § 1983.") (citation omitted); *see also Swift*, 726 F. Supp. 2d at 571 ("[McKeesport Housing Authority], as a public housing authority and municipal corporation, is a person for purposes of § 1983."); *Wright*, 1994 WL 597716, at \*3 ("While not a county or town government, [Philadelphia Housing Authority], as its name indicates, exercises power over only a particular place or district within Pennsylvania and therefore falls within this definition for municipal corporations.").

In *Monell v. Department of Social Services*, 436 U.S. 658 (1978), the Supreme Court established that municipalities and other local governmental units are included among those "persons" subject to liability under § 1983.  But "[u]nder *Monell*, a municipality cannot be subjected to liability solely because injuries were inflicted by its agents or employees." *Jiminez v.*

11

*All Am. Rathskeller, Inc.*, 503 F.3d 247, 249 (3d Cir. 2007). Rather, a municipality can be liable under § 1983 only if the conduct alleged to be unconstitutional either "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or is "visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels." *Monell*, 436 U.S. at 690–91.

A municipality's liability under § 1983 also extends to failures to train, monitor, or supervise where the plaintiff can "identify a failure to provide specific training that has a causal nexus with their injuries and must demonstrate that the absence of that specific training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred." *Watson*, 629 F. Supp. 2d at 487 (quoting *Gilles v. Davis*, 427 F.3d 197, 207 n.7 (3d Cir. 2005)).

The Womacks admit that HACC is a "public housing authority organized pursuant to state enabling legislation." Compl. ¶ 17. As a public housing authority, HACC is a municipal corporation than can only be liable under § 1983 if the Womacks have stated a claim for *Monell* liability. Here, basically the Womacks allege individualized facts related only to their specific treatment, which is insufficient to state a claim under *Monell*. However, they also allege in part that:

> HACC failed to publish or promulgate an Administrative Plan according to 24 C.F.R. § 982.54 or in the alternative make this plan public. HACC failed to publish or promulgate an Administrative Plan which included rules regarding extensions of voucher in violation of 24 C.F.R. § 982.303. In violation of 24 C.F.R. § 903.7 HACC failed to promulgate a separate administrative plan that identified the needs of disabled individuals.

Compl. ¶¶ 85–87. A reasonable inference arises that HACC's failure to maintain an appropriate administrative plan caused HACC to commit the alleged violations of the Womacks' federal constitutional rights. This alleged lack of a policy is, at this stage, sufficient to state a *Monell* claim against HACC. *See Everett v. Hous. Auth. of Shamokin*, No. 13-1515, 2013 WL 12303483, at *11

(M.D. Pa. Nov. 1, 2013) ("In order for Plaintiff to successfully allege a constitutional claim under §
1983 against Defendant [housing authority], she must raise a *Monell* claim alleging that the SHA
is a governmental entity and thus a 'person' under § 1983 and, alleging that either a policy *or lack
of policy* of Defendant [] led to the violation of the Plaintiff's constitutional rights, *i.e.*, her due
process rights.") (emphasis added) (citations omitted). Therefore, the Court denies the motion to
dismiss the Womacks' claim under § 1983.

## III.    Violations of the UTPCPL

Finally, the Womacks allege that HACC's actions constitute unfair methods of competition
and unfair or deceptive acts or practices in violation of the UTPCPL, a Pennsylvania state law.
HACC argues that the Womacks' UTPCPL claim must be dismissed because HACC is a political
subdivision and therefore not a "person" amenable to suit under the UTPCPL, and because HACC
is neither engaged in either trade nor commerce. The Womacks respond that HACC is not a
political subdivision and can therefore be held liable.

The UTPCPL defines a "person" as "natural persons, corporations, trusts, partnerships,
incorporated or unincorporated associations, and any other legal entities." 73 PA. STAT. ANN.
§ 201-2(2). The Pennsylvania Supreme Court has held that political subdivision agencies do not
fall under this definition. *See Meyer v. Cmty. Coll. of Beaver Cty.*, 625 Pa. 563, 576, 93 A.3d 806,
815 (2014) ("[W]e conclude the legislature did not intend for the definition of 'person' to include
political subdivision agencies."). A housing authority, however, is not considered a political
subdivision of the Commonwealth under Pennsylvania law. *See Feldman v. Phila. Hous. Auth.*,
No. CIV. 91-5861, 1994 WL 46514, at *1 (E.D. Pa. Feb. 16, 1994) (explaining that the Statutory
Construction Act and Rule 76 of the Pennsylvania Rules of Civil Procedure do not include local
agencies or authorities in the definition of "political subdivision"); *Ortiz v. Allentown Hous. Auth.*,

13

42 Pa. D. & C.4th 1, 3 (Pa. Com. Pl. 1999) ("[A] housing authority . . . is considered a state instrumentality rather than a political subdivision or other local agency.").

Nonetheless, to state a claim under the UTPCPL, the Womacks must still allege: "(1) a deceptive act that is likely to deceive a consumer acting reasonably under similar circumstances; (2) justifiable reliance; and (3) that the plaintiff's justifiable reliance caused ascertainable loss." *Ahmed v. Wells Fargo Bank, NA*, 432 F. Supp. 3d 556, 564 (E.D. Pa. 2020) (citing *Seldon v. Home Loan Servs. Inc.*, 647 F. Supp. 2d 451, 470 (E.D. Pa. 2009)). As to the first factor, "[d]eception is defined as intentional misleading by falsehood spoken or acted." *Montanez v. HSBC Mortg. Corp. (USA)*, 876 F. Supp. 2d 504, 520 (E.D. Pa. 2012) (quoting *Christopher v. First Mut. Corp.*, No. 05-1149, 2006 WL 166566, at *3 (E.D. Pa. Jan. 20, 2006)). As to the second, "[r]eliance involves more than a causal connection between the misrepresentation and the harm; rather, the plaintiff must have 'justifiably bought the product in the first place (or engaged in some other detrimental activity) because of the misrepresentation.'" *Ahmed*, 432 F. Supp. 3d at 564 (quoting *Slemmer v. McGlaughlin Spray Foam Insulation, Inc.*, 955 F.Supp.2d 452, 461 (E.D. Pa. 2013)).

Here, the Womacks claim that HACC violated the UTPCPL when it failed to respond to requests for modifications, failed to properly inspect the TC, failed to accommodate the Womacks' disabilities, failed to extend the term of the voucher, and allowed the Womacks to rent two apartments that did not meet HUD standards or the Womacks' needs. In stating their claim, they write: "The Womack Family believes, and therefore avers, that the aforesaid actions and/or inactions of Defendant, constitutes conduct which 73 P.S. § 201.2(4) of the [UTPCPL] defines as unfair methods of competition and unfair or deceptive acts or practices." Compl. ¶ 153. However, this boilerplate "believes and avers" allegation fails to identify a deceptive act or intentional misleading falsehood on the part of HACC, let alone any justifiable reliance thereon. For these reasons, the Court grants HACC's motion to dismiss the Womacks' claim under the UTPCPL.

14

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part the motion to dismiss.

An appropriate order follows.

BY THE COURT:

**GENE E.K. PRATTER**
**UNITED STATES DISTRICT JUDGE**